COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-02-278-CR

 

 

WILLIAM MATTHEW SCHIFFERT                                            APPELLANT

A/K/A JERRY SCHIFFERT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

          OPINION ON PETITION FOR
DISCRETIONARY REVIEW

 

                                              ------------

 

After reviewing Appellant=s
petition for discretionary review, we modify our opinion and judgment in this
appeal.  See Tex. R. App. P. 50.  We withdraw our November 21, 2007 opinion and
judgment and substitute the following.

I.                  
Introduction








A
jury convicted Appellant William Matthew Schiffert a/k/a Jerry Schiffert as a
party to the murder of Corey McMillan, found habitual offender allegations to
be true, and assessed Appellant=s punishment at seventy-five years= confinement.  The trial court sentenced Appellant
accordingly.  On appeal, Appellant raises
four points:  (1) the trial court
egregiously erred in the parties application paragraph of the jury charge by
failing to require the State to prove intent; (2) the evidence is legally and
factually insufficient; (3) trial counsel was ineffective; and (4) the trial
court erred in the self-defense portion of the jury charge.

In
our original opinion and judgment, we held that the evidence was legally
sufficient but factually insufficient under the standards of review in effect
at the time.[1]  On November 22, 2006, the court of criminal
appeals vacated our opinion and judgment and remanded the case for
reconsideration in light of its opinion in Watson v. State,[2]
in which it re-articulated the factual sufficiency standard of review.  Schiffert v. State, 207 S.W.3d 800,
801 (Tex. Crim. App. 2006). 
Reconsidering the factual sufficiency point in light of Watson,
and reaching the remaining issues that we did not reach in our original
opinion, we affirm.








II.               
Background

Brandy
Upchurch began dating McMillan in 1999. 
Soon after, they began living together and eventually moved into the
Budget Inn motel.  According to a
statement that Appellant gave to the police, Appellant first met Upchurch when
he went to the motel to visit a friend. 
Upchurch told Appellant that she could not come outside because her Aold man [McMillan] would beat her.@ 
Appellant continued to talk to Upchurch whenever he went to the
motel.          Ultimately,
Upchurch left McMillan and moved into Appellant=s trailer.  About a
month later, Appellant arrived at the trailer and found Upchurch gone.
According to Upchurch, McMillan had found her in Appellant=s trailer, and after he threatened
her, she went back with him to the motel. 
The following day, November 5, 2001, Upchurch called Appellant to come
get her; she told him that she had been kidnapped by McMillan and that she
wanted Appellant to come pick her up. 
Appellant and his nephew, Aaron Kennedy, went to the motel to get her. 








In
the meantime, after a confrontation with McMillan, Upchurch left the motel on
foot.  She called Appellant and Kennedy,
who picked her up in a nearby restaurant parking lot.  The three of them then drove back to the
motel parking lot.  Upchurch first
testified that their purpose in returning to the motel was to retrieve her
clothes, but on cross-examination she testified she expected to go to Appellant=s trailer, not back to the
motel.   

GinnyLu
Ward was in the parking lot of Enterprise Rent-A-Car, which shares the lot with
the motel, when the events transpired. 
According to Ward, when Appellant drove into the motel parking lot, he Aacted like [he] didn=t see who [he was] looking for, and
[then he] made a U-turn.@ 
Upchurch testified that Appellant stopped the car, called McMillan on
the phone and said, AI=m looking at your punk bitch now.@ 
Soon afterwards, McMillan came out into the parking lot.  According to Ward, A[the driver] saw who [he was] looking
for and [he] gunned it, and when he gunned it, he lost control for just a
moment and hit [a] red truck.@ 
The collision damaged the driver=s door of Appellant=s car; Upchurch testified that they later had to pry the door
open.  Upchurch also admitted on
cross-examination that she told the prosecutor before trial that Appellant
tried to run over McMillan at some point during the incident.[3]









Ward
testified that Appellant parked his car twelve to fifteen inches behind
McMillan=s car in such a way that McMillan=s car could not have pulled out
without hitting Appellant=s car.  Kennedy then jumped out of the car and began
stabbing McMillan.  Ward testified that,
as Kennedy stabbed McMillan, McMillan said, A[W]hat the hell are you doing?@ and A[W]hy are you here?@ 
Ward said that as Kennedy was stabbing McMillan, Appellant turned to her
and Asmirked.@

Kennedy
got back in the car, and Appellant quickly drove away.  As the car left the lot, Upchurch looked
back; she saw McMillan=s hand over his throat and blood on
his shirt. 

Officer
Michael McGuire was dispatched to the motel, where he found McMillan, who was
bleeding and appeared to have been stabbed in the left side of his neck and on
the left side of his chest.  McMillan was
taken to the hospital, where he later died. 
Detective Tim Gilpin was also dispatched to the scene.  Witnesses gave him the license number of the
car Appellant was driving; he ran the license and learned the car was
registered to Appellant.








The
day after McMillan=s death, Officer Richard Curtis, who
was assigned to the Crime Scene Search Unit, was dispatched to an apartment complex
after a search warrant had been obtained for Appellant=s vehicle.  Police found the car at the complex and
impounded it.  While examining the car,
Curtis stated that he had trouble getting the driver=s-side door open; the door would open
only about twelve inches.  There was one
license plate on the car, but it was not registered to the car. 

Upchurch
said that, in the days following McMillan=s death, she saw Appellant, and he and Kennedy tried to stay
separate from each other. She also stated that she heard Appellant discuss
leaving town because he was on parole and he was afraid that the police would
be looking for him.  

On
November 9, 2001, Officer Benjamin Jones was on patrol when he saw a car with a
brake light out.  He pulled the car over
and asked for identification, but the driver had none.  The driver gave his name as AMichael Smith.@ 
Officer Kenneth Stack arrived on the scene after Jones had stopped the
car.  Based on a photo that he had seen
earlier that day, Stack recognized Appellant as the driver.  According to Stack, when he showed the photo
to Appellant, Appellant said, AYou got me.@ 

According
to Deputy Medical Examiner Daniel Konzelmann, McMillan=s body had two distinct stab wounds,
one on the chest and one on the neck. 
The neck wound was not lethal because it did not cross any vital
structures.  The wound to the chest was
lethal because it went into the heart. 
Konzelmann saw no defensive wounds on McMillan=s upper arms or hands and no signs
indicating a prolonged struggle.

 








 

III.             
Charge Error: The Law of Parties

In
his first point, Appellant argues that the trial court erred by misstating the
law of parties in the application paragraph of the jury charge and that the
error caused Appellant egregious harm.

A.              
Standard of review

Appellate review of error in a jury charge
involves a two-step process.  Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731B32.  If there is error in the court=s charge
but the appellant did not object to it at trial, we must decide whether the
error was so egregious and created such harm that appellant did not have a fair
and impartial trialCin short, that Aegregious
harm@ has
occurred.  Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g);
see Tex. Code Crim. Proc. Ann.
art. 36.19 (Vernon 1981); Hutch v. State, 922 S.W.2d 166, 171 (Tex.
Crim. App. 1996).  Jury charge
error is egregiously harmful if it affects the very basis of the case, deprives
the defendant of a valuable right, or vitally affects a defensive theory.  Stuhler v. State, 218 S.W.3d 706, 719
(Tex. Crim. App. 2007); Hutch, 922 S.W.2d at 

171.








When examining the record to determine whether
jury‑charge error is egregious, the reviewing court should consider the
entirety of the jury charge itself, the evidence, including the contested
issues and weight of the probative evidence, the arguments of counsel, and any
other relevant information revealed by the record of the trial as a whole.  Stuhler, 218 S.W.3d at 719; Bailey
v. State, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); Almanza, 686
S.W.2d at 171.  The purpose of this
review is to illuminate the actual, not just theoretical, harm to the
accused.  Almanza, 686 S.W.2d at
174.  Egregious harm is a difficult
standard to prove and must be determined on a case-by-case basis.  Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002); Hutch, 922 S.W.2d at 171.

B.               
The charge

The
Texas Penal Code states that A[a] person is criminally responsible
as a party to an offense if the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both.@ 
Tex. Penal Code Ann. ' 7.01(a) (Vernon 2005).  Criminal responsibility is defined several
ways, one of which is that the defendant, Aacting with intent to promote or assist the commission of the
offense . . . solicits, encourages, directs, aids, or attempts to aid
the other person to commit the offense.@  Id. ' 7.02(a)(2).    








The
abstract portion of the charge submitted to the jury stated, in relevant part:

All persons are parties to an offense who are guilty
of acting together in the commission of the offense.  A person is criminally responsible as a party
to an offense if the offense is committed by his own conduct, by the conduct of
another for whom he is criminally responsible, or by both.

 

A person is criminally responsible for an offense
committed by the conduct of another if, acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense.  Mere presence alone will not constitute one a
party to an offense.

 

The application
portion of the jury charge stated, in relevant part, that the jury was
authorized to find Appellant guilty of murder if it found that

Aaron Kennedy did . . . intentionally with
the intent to cause serious bodily injury to Corey McMillan, commit an act
clearly dangerous to human life, namely, to stab him with a knife, which caused
the death of an individual, Corey McMillan, and you further find that the
Defendant, William Matthew Schiffert, acted with intent to solicit, encourage,
direct, aid, or attempt to aid Aaron Kennedy in the commission of the offense . . .
.  

 

Thus, while the
abstract portion of the charge tracked the language of section 7.02(a)(2), the
application portion did not.  Appellant
did not object to this discrepancy at trial.

C.              
Analysis








Although
the charge erroneously failed to track the language of penal code section
7.02(a)(2), we hold that Appellant cannot show egregious harm because the
charge required affirmative jury findings on the same elements as those recited
in the penal code.  See
Almanza, 686 S.W.2d at 171.

The elements of party liability under penal code
section 7.02(a)(2) are (1) acting with intent that the offense be committed,
(2) the defendant solicits, encourages, directs, aids, or attempts to aid (3)
another person to commit an offense.  Tex. Penal Code Ann. ' 7.02(a)(2).  The charge authorized the jury to find
Appellant guilty as a party if he (1) acted with intent (2) to solicit,
encourage, direct, aid, or attempt to aid (3) Kennedy in the commission of the
offense.  The order of the words is
different, but the meaning is the same: 
the jury could not find Appellant guilty as a party unless it found that
he intended the commission of McMillan=s
murder.  The charge required the jury to
find that Appellant committed some act intended to solicit, encourage, direct,
aid, or attempt to aid in McMillan=s
murder; section 7.02(a)(2) requires the same findings.  Though the words Aacted
with intent@ are separated from the words Acommission
of the offense@ in the charge, the former
modify the latter.  








Stated differently, the phrase Aacting
with intent to promote or assist the commission of the offense@ in the
penal code has the same practical meaning and requires the same findings as the
phrase Aacted
with the intent to solicit, direct, aid, or attempt to aid . . . the commission
of the offense@ in the charge.  The words Asolicit@ and Adirect@ are
roughly synonymous with the word Apromote,@ and the
word Aaid@ is
closely synonymous with the word Aassist.@  Thus, while the charge reordered the words
used in the statute, the intent required by the charge is the same as the
intent required by the statute.[4]


Because the charge=s
application paragraph required the jury to find the same elements of party
liability listed in section 7.02(a)(2), we hold the error did not cause
egregious harm to Appellant, and we overrule his first issue.

IV.            
Charge Error: Self Defense

In
his fourth point, Appellant argues the trial court erred by submitting an
erroneous self-defense instruction to the jury. 
The State argues that even if the charge was erroneous, Appellant did
not suffer egregious harm because no rational jury could have found that
Appellant or Kennedy acted in self-defense.

 








A.              
The self-defense instruction

The
trial court=s instruction on self-defense reads,
in pertinent part, as follows:

Now if you find from the evidence beyond a reasonable doubt
that the said Defendant, William Matthew Schiffert or Aaron Kennedy, did stab
Corey McMillan with a deadly weapon . . . but you further find from the
evidence, as viewed from the standpoint of the Defendant at the time,
that from the words or conduct, or both, of Corey McMillan, it reasonably
appeared to the Defendant that his life or person was in danger and
there was created in his mind a reasonable expectation of fear or death or
serious bodily injury from the use of unlawful deadly force at the hands of
Corey McMillan, and that acting under such apprehension and reasonably
believing that the use of deadly force on his part was immediately necessary
to protect himself against Corey McMillan=s use or attempted use of unlawful deadly force, he
stabbed Corey McMillan with a knife, and that a reasonable person in the
Defendant=s position would not have retreated, then you should
acquit the [D]efendant on the grounds of self-defense, or, if you have a
reasonable doubt as to whether or not the Defendant was acting in self-defense
on the said occasion and under the circumstances, then you should give the
Defendant the benefit of the doubt and say by your verdict not guilty.
[Emphasis added.] 

Appellant did not
object to the instruction at trial.

B.               
Analysis








Appellant
argues that the charge erroneously instructed the jury that it could find
Appellant not guilty by reason of self-defense only if it found that Appellant
stabbed McMillan because he reasonably believed that his own life was in
danger.  Because it is undisputed that
Appellant remained in the car while Kennedy confronted and killed McMillan, we
agree with Appellant that the charge was erroneous; but we also agree with the
State that the error did not cause Appellant egregious harm because no reasonable
jury, even if properly instructed, could have found beyond a reasonable doubt
that Kennedy killed McMillan in self-defense.

We
first consider the entirety of the jury charge itself and the state of the
evidence.  See Stuhler, 218
S.W.3d at 719.  The charge properly
instructed the jury that an actor=s use of
deadly force against another in self-defense is justified only when the actor
reasonably believes deadly force is immediately necessary to protect the actor
or a third person from the other=s use or
attempted use of deadly force.  Tex. Penal Code Ann. '' 9.32 (Vernon
Supp. 2007), 9.33 (Vernon
2003).  ADeadly
force@ means
force that is intended or known by the actor to cause, or in the manner of its
use or intended use is capable of causing, death or serious bodily injury.  Id. ' 9.01.  The charge also instructed the jury that the
use of deadly force is not justified if an actor provokes another=s use or
attempted use of deadly force by some act or language.  See id. ' 9.31(b)(4).








Brandy Upchurch testified that immediately before
the altercation, Appellant telephoned McMillan and said, AI=m
looking at your punk bitch now,@ and
that those were Afighting words.@  Upchurch and GinnyLu Ward both testified that
McMillan had nothing in his hands when he came out of the motel room.  Upchurch testified that McMillan struck
Kennedy with his fist, and Appellant said the same thing in his written
statement to police.  Considering the
state of the evidence, a reasonable jury properly instructed on the issue of
self-defense could not have found that Kennedy was justified in using deadly
force against McMillan; Appellant provoked the altercation, and even Appellant=s and
Upchurch=s
descriptions of the fight show that McMillan did not use or attempt to use
deadly force against Kennedy.  Thus,
Appellant has shown at most theoretical harm, not actual harm, flowing from the
erroneous self-defense charge.  See
Almanza, 686 S.W.2d at 174.

We therefore hold that Appellant was not
egregiously harmed by the erroneous instruction, and we overrule his fourth
point.    

V.              
Legal Sufficiency

In
his second point, Appellant claims that the evidence presented at trial is
legally insufficient to support his conviction.

A.              
Standard of Review








When
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612
(Tex. Crim. App. 2001).  This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  When
performing a legal sufficiency review, we may not sit as a thirteenth juror,
re-evaluating the weight and credibility of the evidence and, thus,
substituting our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).

When
a jury returns a general verdict and the evidence is sufficient to support a
guilty finding under any of the allegations submitted, the verdict will be
upheld.  Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003); Tippitt v. State, 41 S.W.3d 316,
323 (Tex. App.CFort Worth 2001, no pet.).  Thus, we apply the legal sufficiency standard
of review to each theory submitted to the jury in the court=s charge.  Rabbani v. State, 847 S.W.2d 555, 558
(Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993); Tippitt,
41 S.W.3d at 323.








Sufficiency
of the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  This
hypothetical charge accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State=s burden of proof or unnecessarily
restrict the State=s theories of liability, and
adequately describes the particular offense for which the defendant was
tried.  Id.

B.               
Analysis

Appellant
was driving the car when he, Kennedy, and Upchurch arrived at the motel.  According to a witness, Appellant seemed to
be looking for someone as he drove through the parking lot.  Appellant called McMillan from his car and
told him, AI=m looking at your punk bitch now.@ 
When he saw McMillan, he Agunned@ the car.  Appellant subsequently parked behind McMillan=s car, and then Kennedy jumped out of
the car and began stabbing McMillan.  The
jury could rationally have inferred that Appellant=s focus was on McMillan, rather than
getting Upchurch=s belongings, and that Appellant used
what Upchurch conceded were Afighting words@ toward McMillan.  Moreover, a rational jury could conclude that
by parking behind McMillan=s car, Appellant wanted to ensure
that McMillan did not leave the area.








Given
all this evidence, as well as the speed with which Kennedy jumped from
Appellant=s car and began stabbing McMillan, a
rational jury could conclude that Appellant acted with the intent to assist
Kennedy in the stabbing of McMillan, and that he solicited, encouraged,
directed, aided, or attempted to aid Kennedy in the stabbing of McMillan.  Thus, 
viewing the evidence in the light most favorable to the verdict, we find
that a rational jury could have found beyond a reasonable doubt that Appellant
was guilty of murder as a party.  We
overrule the legal sufficiency portion of Appellant=s second point.

VI.            
Factual Sufficiency

A.              
Standard of Review

In
our original opinion in this appeal, our factual sufficiency review was largely
guided by the standard articulated by the court of criminal appeals in Zuniga
v. State, as follows:

[T]here are two ways in which the evidence may be
insufficient.  First, when considered by
itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. 
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict.  Weighing all
the evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond‑a‑reasonable‑doubt standard could not
have been met, so the guilty verdict should not stand.  This standard acknowledges that evidence of
guilt can Apreponderate@ in favor of conviction but still be insufficient to
prove the elements of the crime beyond a reasonable doubt.

 

144 S.W.3d 477,
481 (Tex. Crim. App. 2004), overruled by Watson, 204 S.W.3d at 417.  In Watson, the court disavowed and
overruled Zuniga=s articulation of the standard of
review:








Any holding that a criminal appellate court can
reverse and remand for a new trial even when the evidence Apreponderates@ in
favor of a conviction is inconsistent with that historically required high
level of skepticism.

 

. . . We
therefore disavow such language in Zuniga and reiterate that it is not
enough that the appellate court harbor a subjective level of reasonable doubt
to overturn a conviction that is founded on legally sufficient evidence.  An appellate court judge cannot conclude that
a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because, on the quantum of evidence admitted,
he would have voted to acquit had he been on the jury. . . .  We have always held that an appellate court
must first be able to say, with some objective basis in the record, that the
great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury=s verdict before it is justified in exercising its
appellate fact jurisdiction to order a new trial.

 

Watson, 204 S.W.3d at 417.  The court restated the standard of review in
factual sufficiency cases as follows:

[F]actual‑sufficiency
analysis [comprises] two prongs. The first prong asks whether the evidence
introduced to support the verdict, though legally sufficient, is nevertheless Aso weak@ that the jury=s verdict seems Aclearly wrong and manifestly unjust[.]@ 
The second prong asks whether, considering conflicting evidence, the
jury=s verdict, though legally sufficient,
is nevertheless against the great weight and preponderance of the evidence. 

Id. at 414B15 (citing Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000)).








To
make this determination, we consider all of the evidence in a neutral light,
favoring neither party.  Id. at
414.  It is not enough that this court Aharbor a subjective level of
reasonable doubt to overturn [the] conviction.@  Id.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s resolution of a conflict in the
evidence.  Id.  We may not simply substitute our judgment for
the fact-finder=s. 
Johnson, 23 S.W.3d at 12. 
Unless the record clearly reveals that a different result is
appropriate, we must defer to the jury=s determination of the weight to be given contradictory
testimonial evidence because resolution of the conflict Aoften turns on an evaluation of
credibility and demeanor, and those jurors were in attendance when the testimony
was delivered.@  Id. at 8. 
Thus, we must give due deference to the fact-finder=s determinations, Aparticularly those determinations concerning
the weight and credibility of the evidence.@  Id. at 9.

B.               
Analysis








In
this appeal, the difference between the standard of review articulated by Zuniga
and the one articulated by Watson compels a different outcome.  In our original opinion, we applied the first
prong of the Zuniga standard and held Aall of the evidence in the instant case . . . that could
legally support a rational jury=s conclusion is nevertheless so weak
when viewed in a neutral light that our confidence in the verdict is
undermined.@ 
Schiffert, 207 S.W.3d at 498. 
But applying the first prong of the Watson test, we cannot
say that Athe evidence introduced to support
the verdict, though legally sufficient, is nevertheless >so weak= that the jury=s verdict seems >clearly wrong and manifestly unjust[.]=A  Watson, 204
S.W.3d at 414B15 (quoting Johnson, 23 S.W.3d
at 11) (emphasis added).

The
jury heard three versions of the events surrounding McMillan=s death: GinnyLu Ward=s, Brandy Upchurch=s, andCvia his written statementCAppellant=s.

Ward
testified that Appellant drove his car into the Budget Inn parking lot, Aacted like they didn=t see who they were looking for, and
they made a U-turn.@ 
While making the turn, Athey saw who they were looking for
and the driver gunned it,@ lost control, and hit a red
truck.  Appellant then parked his car at
an angle behind McMillan=s, and the passenger jumped out and
began slashing at McMillan.  McMillan
said, AWhat the hell are you doing?@ and AWhy are you here?@ as his assailant slashed at him.  Meanwhile, Appellant looked at Ward and
smirked.  The passenger then jumped back
into the car, and Appellant sped away. 
Ward estimated that the incident lasted Aa minute, minute and a half, two tops.@ 
She said she was standing fifteen feet from Appellant=s car during the altercation. 








Upchurch
testified that on the morning of McMillan=s death, she moved her belongings out of his motel room and
into the next-door neighbor=s, where she telephoned Appellant to
come and get her.  She walked away from
the motel, and Appellant and Kennedy picked her up in a nearby restaurant
parking lot.  Instead of driving to
Appellant=s trailer, as Upchurch expected,
Appellant, Kennedy, and Upchurch drove back to the motel, ostensibly to
retrieve Upchurch=s clothes.  Appellant drove through the parking lot so
that the passenger door would be facing the motel room door, allowing KennedyCwhom McMillan did not knowCto jump out and retrieve Upchurch=s clothes.  As he drove, Appellant placed a cell phone
call to McMillan and said, AI=m looking at your punk bitch now.@ 
Appellant collided with the red truck, then drove around the parking lot
and stopped the car by the door to the motel room where Upchurch had put her
clothes.  Kennedy jumped out of the car
and stood in front of it.  McMillan came
out of his motel room and tried to open Appellant=s car door, but it was locked.  Appellant and McMillan argued through the car
window, and Kennedy told McMillan to go back inside.  McMillan then grabbed and hit Kennedy, and
Upchurch saw Kennedy Aswinging on him.@ 
She said the fight lasted Aa minute or two, a couple of seconds, something like that.@ Kennedy got back in the car, and
Appellant drove away.  Upchurch admitted
that her recollection was Afuzzy@ because she Adid a lot of drugs back then,@ Athings keep changing within [her] head,@ and she was confused as to what
actually took place.  She admitted that
she gave police a written statement in which she stated that Appellant tried to
get out of the car when McMillan came out of the motel room. 








In
his written statement to police, Appellant wrote that McMillan came out of the
motel, Kennedy Agot out of the car as soon as he got
in range,@ McMillan hit Kennedy in the face,
and Kennedy Apanicked and pulled out a knife and
stuck him[.]  He dived in the car and we
left.@ 

In
addition to the three eyewitness accounts, the testimony of the medical
examiner is relevant to our analysis. 
The medical examiner testified that McMillan had no defensive wounds
such as cuts or bruises on his arms or hands and there was no indication that
he had struck someone recently. 

Appellant
is guilty, if at all, as a party to McMillan=s killing because the undisputed evidence shows that Kennedy
actually stabbed the victim.  Appellant
performed acts that aided Kennedy in the commission of the offense, namely,
placing the taunting phone call to McMillan, driving Kennedy Ain range@ of McMillan, and driving Kennedy
away from the scene.  The key question,
therefore, is whether he performed those acts with the intent to promote
or assist McMillan=s killing.  See Tex.
Penal Code Ann. '
7.02(a).  Stated in terms of the factual
sufficiency standard of review, the question is whether the evidence of
Appellant=s intent is so weak as to seem Aclearly
wrong and manifestly unjust.@  See Watson, 204 S.W.3d 414B15.








The evidence that supports the jury=s
finding that Appellant intended to promote or assist in McMillan=s
killing is as follows:  Instead of
driving Upchurch to his trailer as Upchurch expected, he drove back to the
motel.  He made a loop through the
parking lot as thoughCaccording to WardChe was
looking for someone he could not find. 
Appellant then made a taunting phone call to McMillan, which prompted
McMillan to leave his motel room. 
Appellant collided with another vehicle, then parked his car so that
Kennedy was Ain range,@ according
to Appellant=s written statement.  According to Ward, Kennedy jumped out of the
car and immediately slashed at McMillan; meanwhile, Appellant looked at Ward
and smirked.  All three eyewitnesses
agree that Kennedy then jumped back into the car and Appellant sped away from
the scene.








The following evidence tends to support the
conclusion that Kennedy killed McMillan on the spur of the moment and weighs
against a finding that Appellant intended to promote or assist in McMillan=s death:
Upchurch testified that Appellant drove her back to the motel to retrieve her
clothes and that he drove in a loop through the parking lot to position Kennedy
closer to the motel room door so that he could run in and get her bags.  Ward and Upchurch estimated that the ensuing
altercation lasted as long as two minutes, lending some credence to Upchurch=s
testimony that something more transpired than Kennedy=s
leaping out and stabbing McMillan as soon as the car stopped.  Appellant and Upchurch both asserted that
Kennedy stabbed McMillan only after McMillan struck him.

But other evidence contradicts the notion that McMillan
initiated a struggle that culminated in his death.  First, Appellant=s
taunting phone call to McMillan contradicts Upchurch=s
testimony that the plan was for KennedyCwho was
unknown to McMillanCto dash into the motel room and
retrieve her bags.  Second, the medical
examiner=s
testimony that McMillan=s corpse had no defensive wounds
and showed no signs of having struck someone recently contradicts the
possibility of a prolonged struggle and Appellant=s and
Upchurch=s claim
that McMillan hit Kennedy first. 
Finally, Upchurch=s testimony that she was
confused about what happened and Afuzzy@ from
drug use diminishes the impact of her other testimony.








In his petition for discretionary review,
Appellant points to other evidence that he contends renders the verdict
manifestly unjust.  Upchurch testified
that her relationship with McMillan was violent, that he had coerced her with
threats into returning to the motel after he found her living in Appellant=s
trailer, and that he had said that he Ahad a
bullet@ for
Appellant.  A friend of McMillan=s
testified that she had seen McMillan shove Upchurch on one occasion and lift
her by the throat on another occasion.[5]  Ward testified that she saw McMillan arguing
with and shoving a white female in front of the Budget Inn fifteen to twenty
minutes before the stabbing.  McMillan
was older, larger, and heavier than Kennedy. 
This is some evidence that McMillan had a propensity for violence, but
does not prove that he started the fight that resulted in his death; nor is it
so strong as to render the jury=s
verdict clearly wrong or manifestly unjust. 
See Watson, 204 S.W.3d at 414B15. 

A jury is responsible for resolving the conflicts
in the evidence.  Wesbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001).  Further, a jury may believe some, all, or none
of a witness=s testimony.  Chambers v. State, 805 S.W.2d 459,
461 (Tex. Crim. App. 1991). 
Here, the jury resolved the conflicts in the evidence against
Appellant.  Considering all of the
evidence in a neutral light, we cannot say that it is so weak that the jury=s
verdict seems clearly wrong and manifestly unjust or, considering conflicting
evidence, the jury=s verdict is against the great
weight and preponderance of the evidence. 
Therefore, the evidence is factually sufficient to support the jury=s
verdict.  See Watson, 204 S.W.3d
414B15.








In our original opinion, we analyzed in detail
the evidence recounted in the court of criminal appeals=s
opinion in Vodochodsky v. State, 158 S.W.3d 502, 511 (Tex. Crim. App.
2005) (op. on reh=g).  In that case, the court reversed for factual
insufficiency Vodochodsky=s conviction as a party to the
slaying of three peace officers.  Id.  The court decided Vodochodsky
between its decisions in Zuniga and Watson, but it did not cite Zuniga
when articulating the applicable standard of review.  See id. at 510.  The court cited Johnson for the
proposition that a court must Aset
aside the verdict if >proof of guilt is so obviously
weak as to undermine confidence in the jury=s
determination . . . .=@  Id. (quoting Johnson, 23 S.W.3d
at 11).  Under Watson=s re-articulation
of the factual sufficiency test, a court is authorized to set aside a verdict
only if Athe
evidence introduced to support the verdict, though legally sufficient, is
nevertheless >so weak= that
the jury=s verdict
seems >clearly
wrong and manifestly unjust[.]=A  Watson, 204 S.W.3d at 414B15
(quoting Johnson, 23 S.W.3d at 11). 
Though the court quoted Johnson in both Vodochodsky and Watson,
its emphasis in the latter case on Johnson=s Aclearly
wrong and manifestly unjust@
language instead of its Aundermine confidence in the jury=s
determination@ language calls into doubt the
standard applied in Vodochodsky. 
Therefore, we decline to apply the standard of review or reasoning
articulated in Vodochodsky and instead apply the standard of review
articulated in Watson.








We hold that the evidence is factually sufficient
to support the jury=s verdict that Appellant, acting
with intent to promote or assist Kennedy in the stabbing death of McMillan,
solicited, encouraged, directed, aided, or attempted to aid Kennedy in the
stabbing death of McMillan.  We overrule
the remainder of Appellant=s second
point.

VII.         
Ineffective Assistance

In
his third point, Appellant agues his trial counsel rendered ineffective
assistance by failing to object to errors in the charge, by failing to request
an instruction on independent impulse and extraneous offenses, and by failing
to object to testimony that Appellant was Aon parole.@ 

A.              
Standard of review

To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel=s representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for
counsel=s deficiency, the result of the trial
would have been different.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 62B63 (Tex. Crim. App. 2001); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).













When
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at
813.  The issue is whether counsel=s assistance was reasonable under all
the circumstances and prevailing professional norms at the time of the alleged
error.  See Strickland, 466 U.S.
at 688B89, 104 S. Ct. at 2065.  Review of counsel=s representation is highly
deferential, and the reviewing court indulges a strong presumption that counsel=s conduct fell within a wide range of
reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  To overcome the presumption of reasonable
professional assistance, Aany allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson,
9 S.W.3d at 813).  In the absence of
direct evidence of counsel=s reasons for the challenged conduct,
we will assume a strategic motivation if any can be imagined.  Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001), cert. denied, 537 U.S. 1195 (2003).  A full inquiry into the strategy or tactics
of counsel should be made only if, from all appearances after trial, there is
no plausible basis in strategy or tactics for counsel=s actions.  See Johnson v. State, 614 S.W.2d 148,
152 (Tex. Crim. App. [Panel Op.] 1981); Ex parte Burns, 601 S.W.2d 370,
372 (Tex. Crim. App. 1980); Stenson v. State, 695 S.W.2d 569, 571 (Tex.
App.CDallas 1984, no pet.).

The
second prong of Strickland requires a showing that counsel=s errors were so serious that they
deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
appellant must show there is a reasonable probability that, but for counsel=s unprofessional errors, the result
of the proceeding would have been different. 
Id. at 694, 104 S. Ct. at 2068. 
A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Id.  The ultimate focus of our inquiry must be on
the fundamental fairness of the proceeding whose result is being
challenged.  Id. at 697, 104 S.
Ct. at 2070.








A
reviewing court will rarely be in a position on direct appeal to fairly
evaluate the merits of an ineffective assistance claim.  Thompson, 9 S.W.3d at 813B14. 
AIn the majority of cases, the record
on direct appeal is undeveloped and cannot adequately reflect the motives
behind trial counsel=s actions.@ 
Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d at
63).  Often, ineffective assistance claims are
better raised within the framework of a post-conviction writ of habeas corpus
under article 11.07 of the code of criminal procedure.  Tex.
Code Crim. Proc. Ann. art. 11.07 (Vernon Supp. 2007); see Rylander v.
State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (A[T]he record on
direct appeal will generally >not be sufficient
to show that counsel=s representation was so deficient as to
meet the first part of the Strickland standard= as >[t]he reasonableness
of counsel=s choices often involves facts that do not
appear in the appellate record.=@); see also
Bone v. State, 77 S.W.3d 828, 837 n.30 (Tex. Crim. App. 2002) (AThis resolution in
no way affects appellant=s entitlement to re-urge this or other
appropriate constitutional complaints on a writ of habeas corpus.@).

B.               
Analysis

First,
Appellant argues counsel was ineffective by failing to object to the charge
errors made the basis of his first and fourth points and discussed above.  The Almanza standard for egregious
harmCcharge error that deprived the
defendant of a fair trialCis essentially the same as the second
prong of StricklandCcounsel=s error that deprived the defendant of a fair trial.  Almanza, 686
S.W.2d at 171; Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  Having already determined that the charge
errors did not deprive Appellant of a fair trial, we now hold that Appellant
has failed to show that counsel=s
failure to object to those same charge errors deprived him of a fair trial.








Next, Appellant argues counsel was ineffective by
failing to request a charge instruction on independent impulse.  There is no enumerated defense of Aindependent
impulse@ in the
penal code, and a trial court does not err by refusing to give such an
instruction.  Solomon v. State, 49
S.W.3d 356, 368 (Tex. Crim. App. 2001). 
Therefore, Appellant cannot show that but for counsel=s
failure to request an independent impulse instruction, the jury would have
reached a different verdict.

Appellant also contends that counsel was
ineffective by failing to request a specific application of the acts relied on
by the State to prove the Asolicit,
encourage, direct, aid, or attempt to aid@ element
of party liability.  Appellant relies on Johnson
v. State to support this contention. 
739 S.W.2d 299, 305 (Tex. Crim. App. 1987).  In Johnson, the court of criminal
appeals held that the trial court reversibly erred when it failed to explicitly
apply the law of parties to the facts of the case upon the defendant=s timely
objection that the charge failed Ato
allege the specific acts that the State is relying on to make [the defendant] a
party.  It does not say depending on
solicitation, encouragement, direction, aid[,] or attempt to aid [the
principal] in the commission of this offense.@  Id. at 300, 305.  The court explained that Aexplicitly
apply the law of parties to the facts@ means
that a charge should inform the jury which specific mode or modes of conduct
enumerated in penal code section 7.02(a)(2), Asolicited,
encouraged, directed, aided, or attempted to aid,@ formed
the basis for conviction as a party.  Id.
at 305 n.4.








In this case, the charge recited all of the modes
enumerated in section 7.02(a)(2); this was sufficient to comply with Johnson.  Johnson does not require recitation of
the specific acts relied on by the State to prove one or more of those
modes.  Thus, Appellant has failed to
show a reasonable probability that but for his failure to request such a
recitation, the result of the proceeding would have been different.

Next, Appellant argues counsel was ineffective by
(1) failing to object to Brandy Upchurch=s
unsolicited comment that Appellant wanted to get out of town after the killing Abecause
he was on parole@ and (2) failing to request a
jury charge on extraneous offenses to mitigate the Aon
parole@
statement.  The record is silent as to
why counsel did not object to Upchurch=s
statement or request an extraneous offense instruction, but as the State points
out, he could have been motivated by sound trial strategy, namely, to avoid
emphasizing or calling the jury=s
attention to Upchurch=s statement.  Thus, in this instance, Appellant has failed
to satisfy the first half of the Strickland test.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065; Garcia, 57 S.W.3d at 440.








Finally, Appellant contends counsel was
ineffective by failing to object to the charge=s
application paragraph that allowed the jury to convict Appellant as the
principal actor in McMillan=s
killing.  We cannot see how the inclusion
of this language in the charge deprived Appellant of a fair trial.  The undisputed evidence showed that Appellant
remained in the car while Kennedy stabbed McMillan; thus, Appellant could only
be guilty as a party, and the possibility that the jury could have convicted
Appellant as the principal is far fetched. 
Thus, once again, Appellant has failed to show that but for counsel=s
alleged unprofessional conduct, the jury would have returned a different
verdict.

Having determined that Appellant failed to
establish at least one of the Strickland prongs with regard to each of
counsel=s
alleged errors, we overrule his third point.

VIII.       
Conclusion

 

Having
overruled all of Appellant=s points, we affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON
and GARDNER, JJ.

 

PUBLISH

 

DELIVERED: March 20, 2008

 











[1]Schiffert v. State, 157 S.W.3d 491, 496, 499 (Tex. App.CFort Worth 2004), rev=d
and judgm=t vacated,  207 S.W.3d 800 (Tex. Crim. App. 2006).





[2]204 S.W.3d 404, 415‑17 (Tex. Crim. App. 2006).





[3]Upchurch testified that Appellant attempted to run
over McMillan Awhen they were starting to fight, him and Aaron, and
all he was trying to do was stop them.@  But Ward did
not mention Appellant moving his car between the time he stopped and the time
he fled with Kennedy; instead, she testified that Appellant was Asmirking@ at her
during this period.





[4]This analysis provokes the question of why the
legislature included both the phrase Aacting with intent to promote or assist the commission
of the offense@ and the phrase Asolicits, directs, aids, or attempts to aid the other
person to commit the offense@ in section 7.02(a)(2)=s definition of party liability.  One reason is that in some situations, an
actor may aid another in the commission of an offense without intending that an
offense be committed if the actor does not know the other=s
conduct is an offense; under that circumstance, the actor is not a party to the
offense.  See, e.g., Amaya v.
State, 733 S.W.2d 168, 175 (Tex. Crim. App. 1986) (holding defendants could
not be guilty as parties when the State failed to show they Aknew the
criminality of the conduct they assisted@).  Such lack of
knowledge is not a factor in a murder prosecution like this one.  See id. at 174 (A[Murder]
is conduct that by its very nature supplies proof of the parties=
knowledge that it is >criminal.=@).





[5]Appellant=s representation that the witness testified that Aon
many occasions she was witness to
McMillan hitting Upchurch and lifting her up by the throat@ is not
supported by the record. [Emphasis added.]